181719, U.S. Bank Trust, versus Julia L. Jones. Thank you. Okay, Mr. Cox. Good morning, Your Honors. Tess, I might reserve two minutes for rebuttal. Yes, certainly. The only document in issue in this case is a two-part document comprised of a five-payment loan payment summary and a 65-page loan history. Both parts of the document are generated by computers. The seven years of history from 2007, the loan origination date, to the point where Caliber took over servicing in 2014, constitutes information created by Bank of America and Soteris during those seven years of servicing. Caliber had no exposure to this loan in its servicing context until November of 2014. Caliber offers a document which it claims is proof of all of the activity in those first seven and one-half years of loan servicing. There is no Bank of America record in evidence in this case. There is no Soteris record in evidence in this case. What is contained in that seven and one-half year portion of Caliber's history is pure hearsay. Well, where did they get that from? Was that delivered to them in a form from the previous servicer, or was it just an electronic transfer of information which came from the previous servicer? How did they get it? Well, it comes in two ways. It comes electronically, and that is an issue because thousands of loans are transferred in batches, and the data is transferred electronically. What we normally see in foreclosure cases is actual history documents from Bank of America. You can identify it. There are names on it. All the history from Soteris, you can identify it. Could you answer the question? Well, as I said, it comes two ways. All right. You say it's electronically. What's the next answer? How did they get it? The Bank of America electronically transfers data off its software system, in this case, first to Soteris. Soteris then has to manipulate that data from Bank of America's software system into its own system. Then Soteris repeated the same process. It electronically transferred its own data now back to Bank of America and had to repeat that same integration process. And then in 2014, Bank of America electronically transferred all of the data, all of its data, into a caliber system. And, again, a manipulation had to be performed between those two different servicing systems. There's no paper at any time, as I understand it. Well, the paper is – That's correct. The paper data is also transferred. Papers are transferred. In every case, we do see a Bank of America printout of its data. This is an unusual case, Your Honor. And, in fact, you put into the record your own client's receipt of certain statements that she had gotten from the mortgage holders and the servicers. From Soteris. Yes, Your Honor. That's correct. Neither of which she contested. No, she did not, Your Honor. No. So, with that background, we start off with a problem right from the get-go. And it's a very simple problem. We have to deal with Rule 1002, the simple best evidence rule. Rule 1001D defines an original document as one which accurately reflects an accurate printout as one which accurately reflects the data in the computer. The witness here didn't testify that she compared any of the data in Exhibit A to any computer. And she was incapable of comparing the data for the Bank of America period or the Soteris period. So we start right off the bat with a problem there. The trial court somehow believed that by applying Rule 1003, dealing with duplicates, that that evaded the requirements or the definition of an original printout in 1001D. So Lisa lit that right from the get-go. The trial judge was an error in that ruling. I'm sorry. The original printout? There is a printout on the data that a computer generates a printout. That's what Exhibit A is. And so Exhibit A is specifically addressed in 1001D. And it is considered to be an original for the purpose of 1002 only if it accurately reflects the data in the computer. All the witness has to do is hold the printout to her screen and be able to testify in court. This payment summary showing $226,000 in due matches the numbers on our system.  But what you're saying is she didn't do that. She did not do that. She did not testify that she did that, and she couldn't do it regarding the prior payment histories. And she doesn't testify that anybody else did it? She testified that she doesn't even know who gave Exhibit A to the trial court. Would you answer my question? She did not testify that anybody else did that, Your Honor. I thought she testified that the printouts were an accurate reflection of what is contained in the computer system. I respectfully disagree. She did not make that statement. All right. We'll read the record then. Okay. Well, did she not, before we leave this subject, didn't she testify that there were at times of transfer from one to another servicer, and at least to her own servicer, that there were some checking mechanisms that were employed to sort of give them an assurance of verification? She testified that they were checked for accuracy. But when you read her testimony at the beginning of the transcript, what she's revealing is that all they could do, all that Caliber could do, was verify that its starting numbers on November 15, 2014, matched the ending numbers of Bank of America. There was no way to check whether the Bank of America records themselves over its period of servicing were accurate. There was no way for a Caliber witness to do that. I read the record in exactly the same way that Justice Souter did, that, yes, she did say that there were accuracy checks performed. You appear to be making the argument that there is no way that could have been true despite her testimony. Is that what you're arguing? That is correct, Your Honor, that it was not possible for the successor servicer to go back to 2007 and verify that Bank of America accurately kept the records. They can't know whether the payments were recorded. Even though she testifies that, in fact, their systems are set up to do that, and that was done. She testified that the systems were set up. So you're saying that testimony has to be false because it can't be true. That's correct, Your Honor. Okay. Next we move on to Rule 901, authentication. Authentication usually is a glossed-over, very simple, quick process in a trial. That isn't the case where we are dealing with computer-generated data. The servicers from day one record payments, and they program their computer to record all payments. They import the interest rate on the loan, and the computer is programmed that each time a payment is made, it adjusts the principal balance and it applies the interest. And it does that month by month by month for 10 years in this case. There is no way—the witness testified that Exhibit 8 is a loan history. That's all she said about it. She didn't describe how the computers created the numbers on that loan history. We have no knowledge or evidence of how that happened. She, from reading the transcript that I looked at, she obviously knew what the final servicer did. And are you saying that she had no idea what the previous servicers did, that all she testified to was that she took the number, she looked at the number from the previous servicer, and it was properly inputted into the final servicer's form? That is correct. There are at least two parts to that question. One is whether she herself performed the calculations, performed the accuracy checks. The other is whether she provided testimony, as I believe she did, that the boarding systems of the bank included this. She testified at the time that she was hired. She was hired a year after this incident. Yes, we understand that argument, that she couldn't have personal knowledge before the time she was there. But is that the argument? That is correct, ma'am. Okay. But beyond that, the piece of paper by itself is not proof of the amount due in this loan. The piece of paper only becomes proof when an explanation is offered as to how the numbers on that piece of paper were arrived at. So in that sense, I'm not sure the district court disagreed with you. The question was the admissibility of these documents under 8036. And the district court's final statement is, I find it admissible and as to the objections that are made about some of the calculations not being correct, those go to the weight I will give this document, which I have now found to be admissible. And then it writes an opinion. And in the analysis of why it thinks it's admissible, it rejects two specific arguments that you made that the records were untrustworthy. One had to do with interest calculation, I think. And tell me, what was the other one? I think that was the principle. The per diem was an issue you're on. Okay, the per diem. Yes. Okay. So whether one views that as going to admissibility or possibly also influencing the weight that it gave to those documents, are you attacking the district court's two determinations on those two objections? Yes, Your Honor. The district court, there was literally no evidence for the district court to weigh as to how the computer calculated the balances due in this loan. There wasn't any. The only testimony was the witness says this is the piece of paper. That's all there is. So, yes, the judge was an error in that. As to 8036, this court in Bradley v. Sugarbaker in just May of 2018. I was on that case, and it had to do with a Post-it note that obviously was not a record generated by the hospital in the normal course of business. And it's true we use the language of outsider information, but it was in that specific context. Is that the case you're basing your argument on? Yes, Your Honor. The Ceteris records and Bank America records are outsiders' records. And we don't even have the records here. They weren't in the trial record. But if they were, they would be outsider records. Okay. This court said in U.S. v. Vigna back in 1999. Yeah, I know. But since then, we've decided, and Vigna can be read to contradict your argument. But in the FTC case, which is closer Judge Torea's opinion in the FTC case, which I also was on, there is a footnote that basically accepts integrated business records. Respectfully, Your Honor, I disagree. It is a footnote that is meredictive because those records in FTC were directly authenticated by the accountant who created them. There was no need for the court even to get to the question of integrated records in FTC, Your Honor. Okay. Thank you. You have your reserved time. Counsel. May it please the court, Matt Fitzgerald on behalf of U.S. Bank Trust. First, I'd like to just point out a couple of things about the record that's been discussed. It's on pages 37 and 54 of the appendix where Ms. Lopez testifies that she has checked the loan history and she's found it accurate, particularly for purposes of authenticating the documents under Rule 1001 and Rule 901. Turning to the issue of Rule 8036, the federal rules of evidence say that they should be construed to eliminate unjustifiable delay and expense, ascertain the truth, and secure a just determination. Toward that end, the trial judge here assessed the loan history in this case and the arguments of Ms. Jones. She did not argue that she had been overbilled during the history of her loan at any time. She did not argue that she had made any payments that went unrecorded. She did argue two things about essentially the math that had been done in her records, and the trial court assessed those at some length and rejected them. She's not repeated those arguments on appeal. So what we have here are the trustworthy, found to be trustworthy by the trial judge, loan records for the history of Ms. Jones' loan, and they were properly admitted into evidence. So Rule 8036 in particular exists because the advisory committee recognized that business records are quote, unusually reliable. They're made under a duty of accuracy, under the regular business operations of a business, and they're relied on in daily operations. None of these fundamental things change when a record moves from one business to another. And so the correct and widely recognized rule by this court in the Doe decision and by numerous other federal courts is that when a business record moves from one business to another, when it's integrated and relied on by the second business, it's admissible by that second business under rule. Does it make a difference that the servicer really has very little interest in the accuracy of what it picks up? Because it's picking up, it's a servicer. It's not the mortgagee who is very interested in getting back the money which it loaned at the proper rate of interest or the proper charges. Servicer has a different position in this. So the economic reasons for being really sure that what I have is accurate doesn't exist here in the same way it would if the direct lender was responsible as it used to be. It may be that the interests are not exactly the same, Your Honor, but there is ample testimony in this case, for instance, about the process that was going through to make sure that the records brought into Caliber matched those from Bank of America. Well, I've read her entire testimony. I've read all of it. And what she basically says is, look, this is what they gave us. I know how this is generally done, and therefore it must be accurate. Well, if you're the – and let's step away from this case for a minute. If you're the borrower, you're in sort of a hard position then, aren't you? You have to say – you have to somehow come in with your own evidence. Well, I've got all these statements. They don't add up. And I guess what you're saying is that's the borrower's obligation, as long as the proponent of the document can say, well, it's on my business record. That's right, Your Honor. Rule 8036E, trustworthiness, puts the burden on, in this case, the borrower to show that there's really anything wrong with any part of her record going all the way back. And so here that's what Ms. Jones didn't do and wasn't able to do. So we have various amicus briefs that have been filed here, and they sort of make the argument that Judge Stahl has made – Judge Stahl's question assumed that we were talking about a different case than what the record in this case showed. So I'll follow that assumption. It does seem to me, at least according to the federal agency amicus brief, that the banks have incentives to be sure that the servicers are being pretty accurate or they're going to be in trouble when they come to foreclose or extend the loan or whatever, and that they will fire servicers who provide them with inaccurate information. That assertion is made very strongly in the federal amicus brief that's filed here. But is that economic incentive sufficient? Yes, it is, Your Honor. It's quite clearly, as you said, made in the federal amicus brief here. It's also – I don't think the incentives have to be 100 percent identical to the lender in order to be adequate. So it's sort of like saying a lawyer has no incentive to represent their client well because if they lose all the cases, it's really the client's money. Like the servicers remain in business when they're retained by the lenders, and if that job is done poorly, the cases are lost, foreclosure cannot occur. Well, in this case, foreclosure didn't occur. That's right, Your Honor. You were not able to foreclose because there was apparently a numbered difference between the actual amount owed and the amount in the notice. In the default letter, yes, Your Honor. And there's no claim – it's worth pointing out – there's no claim that that discrepancy has anything to do with prior loan history or goes back to any of the previous servicers. Judge, Justice Souter had a question. Oh, I was just going to sort of suggest a further answer, really. As you point out, if the banks sort of lose in court, you know, they're going to look for a different servicer so they have an interest in themselves assuring that their services are competent. And, you know, in tandem with that, as your answer makes clear, the servicer who provides the faulty records is not going to be in the business of being a servicer very long. So there is a direct interest on the part of the servicer, I would suppose, even though that interest is not in the ultimate sense of being the collector of the money. That's right, Your Honor, yes. So on this point also, the first circuit case law on this point has been discussed back and forth. And I suggest that it is more consistent in support of the integrated business records rule than even the case law itself sometimes gives itself credit for. When the – in the cases – Yes, I actually thought the district court struck a wrong note in saying that the first circuit had relevant rulings on this point. Yes, Your Honor. And just to respond briefly to the point made about the direct marketing, the FTC case, my understanding is that the argument made in that case was that the records that had been brought into evidence contained third-party data. So that's exactly the issue here. The court in responding to that said, first, it's speculation that there's third-party data in there. But then in the alternative said, even if there is third-party data in there, it has been integrated and relied on adequate so that it can be brought in by these parties. And that's the discussion in FTC. So what's the safety valve if, in fact, the servicer has screwed up and not accurately put records into its own system? The safety valve is trustworthiness, Your Honor, under Rule 8036E. And so – and you can see it actually playing out in this case. The borrower comes in. Her counsel makes two efforts. One of them is about the amount of cents per day on the per diem. The other is about fines and fees accruing over time. And she looks at this entire loan history, which is a list of dates and ledger entries, essentially, and she tries to poke holes in it and show that it's untrustworthy. The trial judge considers these arguments and rejects them, and she hasn't made them again here. So if it's true all of the things said in the amicus briefs on the other side, that the industry is rife with problems, then the safety valve for that is trustworthiness. Then the borrowers will be able to show, no, actually, I did make these payments. Here's the evidence that I made these payments that don't show up. And if that happened, it seems fairly clear, I think, that under the rule that I'm espousing, that this court has previously adopted, that that evidence could be excluded, would be excluded as untrustworthy in the discretion of the trial judge applying that point. Are you saying that not in all cases would a document like this be admissible if brother counsel had been able to bring in other evidence showing that the numbers are just incorrect? We went through a period in 208 and thereafter when there were many, many problems in this area. So you're not looking for a generalized rule. You're looking for that in this case there's sufficient to get in under 801. Or are you asking for a general rule? Again, I think this may be a two-part issue. One part goes to the question of untrustworthiness. Correct. And the other part goes to the regular course of business and relied on in the regular course of business. Yes, Your Honor. So the first part of the rule, I am asking for a general rule. I think it's the rule that has been taken by this court, the view in the Doe case and in the direct marketing case, that in general when a business record or a record moves from one business to another, when it's been integrated and relied on, it becomes admissible. Now, the second part, trustworthiness is always there in all of those cases. It always is fair game for discussion. It always can be raised by the borrower. And if an integrated and relied on loan history is proven to be untrustworthy, then it's not admissible under Rule 8036. And that's at the discretion of the trial judge to determine what's trustworthy and what's not. So if there are no further questions, I'll cede the rest of my time. Thank you. Your brother has reserved two minutes, and if you're caught by surprise, I'll give you a chance to respond. Thank you, Your Honor. The counsel says that the keystone to his case is trustworthiness. This court also said in Big No that trustworthiness by itself is not an exception to the hearsay rule. Trustworthiness is part of Rule 807. Yeah, okay, go on. But I would like to respond to a question, a further question that Judge Souter proposed to opposing counsel. The suggestion is that if the services are inaccurate, they will be out of business. That hasn't happened over the last ten years, Your Honor. For example, Bank of America continues to be a servicer. Fifty-eight billion dollars of sanctions have been imposed on Bank of America. It still services. Aquinole Servicing has had billions of dollars of fines. It continues. It's also pertinent to note that the securitization model that this industry uses means that the plaintiffs don't even have a financial incentive. It's the investors who brought the investment certificates out of these trusts. That's where the risk lies, and they have no voice. So I would suggest that the incentives just do not work the way we normally expect. If Bank A makes a loan and Bank A is collecting a loan, it's a whole different animal than what we're dealing with with the mortgage servicing industry. We haven't talked about 807, Your Honors, but I would also suggest here that if this court affirms the district court's decisions in this case, there will be a wholesale migration of the foreclosure cases out of the main district court system to the federal court. It's already happening. The current rate of filings is $2,500 a year. They are going to all move across the street. They already are happening that way, Your Honor. The main court has dealt with this issue for 10 years. It has recognized the problems in this industry. It is the proper – its rules are compelling for this court to consider the correct interpretation of 803-6. And there is no proof that Bank of America's records or Soteris's records meet 803-6. They certainly don't meet 807. Thank you, counsel. Do you need to say anything? Very briefly, Your Honor. Just a couple of very quick points. This issue is broader than just the mortgage servicing industry. And you can see it in the case law from this circuit, the Doe case and the FTC case. Next point. Next point. There does not appear to be a wholesale migration of foreclosure cases from main state court to main federal court. My research suggests that there are several dozen in federal court. There's no evidence in the record one way or the other on this point. Do you have another point? That's all I respectfully ask this court to affirm. Let me ask you then, do you have any response to your brother's response to me that in fact sanctions against services do not seem to work in this context? Yes, Your Honor. So according to the FHFA brief, there are 60-some servicers that have gone out of business or ceased to exist in this country in the last 10 years. And there are very meaningful business incentives for servicers to properly do their jobs essentially or they won't stay in business. Thank you. Okay. Thank you. Thank you both. All rise.